UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

RACQUEL JONES,

        *Plaintiff*,

v.

EMPIRE STATE BANK *and* THERESA POMMERENK, *individually*,

        *Defendants*.

-------------------------------------------------------------------------x

15 CV 5773 (AMD)(RML)

**FIRST AMENDED COMPLAINT**

Plaintiff Racquel Jones, by her counsel, The Harman Firm, LLP, alleges for her First Amended Complaint against Defendant Empire State Bank and Defendant Theresa Pommerenk as follows:

PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Racquel Jones ("Ms. Jones" or "Plaintiff") seeks damages and costs resulting from Defendant Empire State Bank ("Empire" or "Defendant Empire") and Defendant Theresa Pommerenk ("Ms. Pommerenk" or "Defendant Pommerenk") (hereinafter collectively referred to as "Defendants") for: (i) subjecting her to and creating a work environment permeated with severe and pervasive discriminatory conduct based on her race; (ii) terminating her employment due to her race; and (iii) retaliating against her for complaining of unlawful discrimination based on race.

2. This matter arises under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 ("NYCHRL").

## JURISDICTION AND VENUE

3. Pursuant to 42 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under the Civil Rights Act of 1866, as codified at 42 U.S.C. § 1981.

4. Pursuant to 42 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under New York City law, as these claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

5. Pursuant to 42 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to the claims occurred within this District.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. At all times relevant hereto, Ms. Jones was and is a resident of Kings County in the State of New York.

8. At all times relevant hereto, Defendant Empire is a domestic business corporation organized under the laws of New York with a place of business in 1361 North Railroad Avenue, Staten Island, New York 10306.

9. At all times relevant hereto, Defendant Pommerenk is an individual who was and is a resident of Staten Island, New York.

## STATEMENT OF FACTS

10. In and around September 2014, Plaintiff Racquel Jones, a black woman, was hired by Defendant Empire to work as a Bank Teller.

11. Defendant Pommerenk did not participate in the hiring of Ms. Jones.

12. Prior to Ms. Jones's employment with Empire, she had worked as a Bank Teller for prominent banks including TD Bank, N.A., and JPMorgan Chase & Co., where she was promoted to a position as an Assistant Head Teller. She received excellent performance reviews from both banks.

13. Upon Ms. Jones's first day of employment, her supervisor, Defendant Pommerenk, Empire's Branch Manager at the Staten Island location, treated her with derision and hostility.

14. It quickly became clear that Ms. Pommerenk's hostility stemmed from a personal animus against black individuals.

15. For example, Ms. Pommerenk refused to train Ms. Jones, training that she readily provided to Empire's non-black employees. Ms. Pommerenk then set Ms. Jones up to fail by demanding that Ms. Jones perform tasks for which she did not receive training.

16. After approximately one (1) week of Ms. Jones' employment with Empire, Ms. Pommerenk inexplicably gave Ms. Jones a performance review. Ms. Pommerenk wrote that Ms. Jones was not displaying teller duties, was difficult to work with, and had an "attitude problem." Other employees at the bank who observed Ms. Pommerenk's conduct believed that Defendant Pommerenk had a problem with Ms. Jones solely because she is black.

17. Ms. Jones was taken aback by Ms. Pommerenk's scurrilous review. Nonetheless, Ms. Jones continued to fulfill the responsibilities of her position to the best of her abilities.

18. In and around October 2014, Ms. Jones was attending to a black customer in Ms. Pommerenk's presence. After the customer walked away, Ms. Jones commented to Ms. Pommerenk that the customer was "such a nice guy." Ms. Pommerenk responded, "I wish all of *them* were like that." Ms. Jones was startled by Ms. Pommerenk's racist remarks, but decided not to bring it to management so early in her employment, fearing retaliation.

19. On another occasion, Ms. Pommerenk saw that there were many dead leaves in front of Empire's door. She expressed that "it was dirty outside and someone needed to clean it." In front of the staff, she told Ms. Jones, "Racquel, go outside and sweep the floor. Aren't you used to that?" meaning that as a black woman, Ms. Jones must have been used to performing domestic labor.

20. Upon information and belief, Ms. Pommerenk never directed white Bank Tellers to sweep the floors.

21. Ms. Pommerenk continued to treat Ms. Jones differently than other non-black employees based on stereotypes about black individuals. For example, Ms. Pommerenk checked Ms. Jones's cash box daily to make sure she was not stealing money, referring to her as a "thief" and accusing her of stealing another employee's keys.

22. In and around October 2014, Ms. Jones told one of her friends, Nakeysha Imbert, a black individual, to interview for a position at Empire. She interviewed at Ms. Pommerenk's branch along with two (2) other black females. After they had left, Ms. Jones overheard Ms. Pommerenk tell Christine Mazola, Empire's Assistant Branch Manager, "I'm not having another

Aunt Jemima bitch working here." This patently offensive and racist statement deeply offended Ms. Jones.

23. Ms. Jones was extremely offended and could no longer tolerate Ms. Pommerenk's explicit racism and targeted harassment on her own. Ms. Jones told Ms. Mazola that she was no longer comfortable working alongside Ms. Pommerenk.

24. Upon information and belief, Ms. Mazola emailed Branch Administrator, Lisa Gariolo, to explain Ms. Jones's grievances.

25. Ms. Gariolo never responded to remedy the problem and the racist harassment continued unabated.

26. In and around October 2014, Ms. Jones entered the office wearing a scarf over her head. When Ms. Pommerenk saw her, she remarked, "This is not a ghetto establishment."

27. On another occasion, a customer commented to Ms. Pommerenk, "You have a wild bunch." Ms. Pommerenk replied, "I only have one monkey in this circus," and turned to look at Ms. Jones. Ms. Jones was severely embarrassed and insulted.

28. Ms. Jones was informed by another employee that Ms. Pommerenk directed Empire's staff not to speak to Ms. Jones, telling them, "If you help her, you'll deal with me."

29. Ms. Pommerenk's directive obstructed Ms. Jones's ability to do her job and isolated her from her colleagues. Each time Ms. Jones would ask a colleague a question, they would ignore her, fear retaliation from Ms. Pommerenk. Ms. Pommerenk continued to set up Ms. Jones to fail, mandating her to do tasks for which she was not trained. For example, Ms. Pommerenk directed Ms. Jones to close the bank by herself without any training.

30. On or about November 11, 2014, Ms. Jones was called in to a meeting with Ms. Gariolo and Ms. Mazola. Ms. Gariolo told Ms. Jones her employment with Empire was a "good run but you don't belong in this bank."

31. Ms. Gariolo referenced Ms. Pommerenk's first and only negative review after only one (1) week of employment.

32. Ms. Mazola did not speak during the meeting.

33. As Ms. Jones was exiting the bank, she told Ms. Mazola that Empire's termination of her employment was not right. Ms. Mazola replied, "I'm so sorry."

34. Upon information and belief, Empire had never hired a black Bank Teller prior to hiring Ms. Jones and has not hired one since it illegally terminated Ms. Jones's employment.

35. Ms. Pommerenk was determined to terminate Ms. Jones because of her race. Ms. Jones's complaint went unacknowledged and Ms. Pommerenk's misconduct was never addressed or corrected. Instead, Empire, relying on Ms. Pommerenk's racially-motivated, false, negative performance review, terminated Ms. Jones.

36. Ms. Jones suffered direct and proximate emotional and financial harm as a result of Defendants' conduct. This harm included, but is not limited to, mental anguish, emotional distress, and humiliation, and monetary loss including, but not limited to, loss of past and future salary.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Defendants Subjected Plaintiff to a Hostile Work Environment Violating the § 1981**

37. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 36 with the same force as though separately alleged herein.

38. Section 1981, prohibits employers from allowing hostile work environments on the basis of race in the workplace.

39. Defendants created a hostile work environment with pervasive racist comments and conduct.

40. As a direct and proximate consequence of the illegal hostile work environment caused by Defendants' discriminatory conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, all in amounts to be determined at trial.

41. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### SECOND CAUSE OF ACTION
**Defendants Illegally Terminated Plaintiff in Violation of the § 1981**

42. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 41 with the same force as though separately alleged herein.

43. Section 1981, prohibits employers from illegally terminating employees on the basis of race.

44. Defendants terminated Plaintiff based on her race.

45. As a direct and proximate consequence of the illegal hostile work environment caused by Defendants' discriminatory conduct, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress, all in amounts to be determined at trial.

46. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### THIRD CAUSE OF ACTION
**Defendants Subjected Plaintiff to a Hostile Work Environment in Violation of the NYCHRL**

47. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 46 with the same force as though separately alleged herein.

48. The NYCHRL prohibits unlawful discrimination in any manner against any person because of, *inter alia*, their race.

49. Defendants created a hostile work environment, permeated with racist comments and conduct.

50. As a direct and proximate consequence of Defendants' illegal hostile work environment, Plaintiff has suffered and continues to suffer substantial non-monetary damages, including, but not limited to, emotional distress, all in amounts to be determined at trial.

51. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

### FOURTH CAUSE OF ACTION
**Defendants Illegally Terminated Plaintiff in Violation of the NYCHRL**

52. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 51 with the same force as though separately alleged herein.

53. The NYCHRL prohibits an employer from illegally terminating an employee because of their race.

54. Defendants terminated Plaintiff because she is black.

55. As a direct and proximate consequence of Defendants' illegal conduct, Plaintiff has suffered and continues to suffer substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress, all in amounts to be determined at trial.

56. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### FIFTH CAUSE OF ACTION
**Defendants Retaliated Against Plaintiff in Violation of the
§ 1981**

57. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 56 with the same force as though separately alleged herein.

58. Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

59. Plaintiff frequently complained to Defendants about the offensive work environment permeated with race discrimination.

60. Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment for raising complaints of a discriminatory, hostile work environment.

61. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress, all in amounts to be determined at trial.

62. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
**Defendants Retaliated Against Plaintiff in Violation of the NYCHRL**

63. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64. The NYCHRL prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

65. Defendants retaliated against Plaintiff by, *inter alia*, terminating her employment for raising complaints of a discriminatory, hostile work environment.

66. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress, all in amounts to be determined at trial.

67. Defendants' discriminatory treatment of Plaintiffs was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## Request for Relief

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. for the first claim, actual damages to be determined at trial, but in no event less than $500,000;

B. for the second claim, actual damages to be determined at trial, but in no event less than $500,000;

C. for the third claim, actual damages to be determined at trial, but in no event less than $500,000;

D. for the fourth claim, actual damages to be determined at trial, but in no event less than $500,000;

E. for the fifth claim, actual damages to be determined at trial, but in no event less than $500,000;

F. for the sixth claim, actual damages to be determined at trial, but in no event less than $500,000;

G. an award of compensatory and punitive damages;

H. pre-judgment and post-judgment interest;

I. attorneys' fees and costs; and

J. such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 30, 2015

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
*Attorneys for Plaintiff*
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com